

[redacted]

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $300,942.00 | 12-29-2016 | 01-01-2022 | [redacted]4848 | 1a2 / 3702 | *** | LGT | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** JAMES D HOBSON JR
JOSEPH G STRICKLAND
1903 MISSION 66
VICKSBURG, MS 39180-3711

**Lender:** Guaranty Bank and Trust Company
Vicksburg Branch
1900 Cherry Street
Vicksburg, MS 39180

**Principal Amount: $300,942.00** **Date of Note: December 29, 2016**

**PROMISE TO PAY.** **JAMES D HOBSON JR and JOSEPH G STRICKLAND ("Borrower") jointly and severally promise to pay to Guaranty Bank and Trust Company ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Thousand Nine Hundred Forty-two & 00/100 Dollars ($300,942.00), together with interest on the unpaid principal balance from December 29, 2016, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.450% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.**

**PAYMENT.** **Borrower will pay this loan in 59 regular payments of $2,709.87 each and one irregular last payment estimated at $212,584.34. Borrower's first payment is due February 1, 2017, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on January 1, 2022, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**INTEREST CALCULATION METHOD.** **Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.**

**PREPAYMENT PENALTY; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $15.00. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Borrower shall have the right to prepay the loan in whole or in part at any time by payment of the remaining principal balance of the loan plus accrued interest and all outstanding amounts, costs, and other fees due and owing to the date of such prepayment, together with a premium equal to: 3% of the outstanding principal balance if the prepayment occurs during the first year of the loan term; 2% of the outstanding principal balance if the prepayment occurs during the second year of the loan term; and 1% of the outstanding principal balance if the prepayment occurs during the third year of the loan term.** Other than Borrower's obligation to pay any minimum interest charge and prepayment penalty, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: GUARANTY BANK & TRUST COMPANY, 210 HAYDEN STREET BELZONI, MS 39038.**

**LATE CHARGE.** If a payment is 16 days or more late, Borrower will be charged **4.000% of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 5.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ENFORCING OUR RIGHTS.** We can delay enforcing any of our rights under this Agreement without losing them. The fact that we waive our rights in one instance does not mean we will waive them in other instances. All our rights can be enforced against your heirs, legal representatives, successors or assigns.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay

EXHIBIT A

**PROMISSORY NOTE**
**(Continued)**

Loan No: ****4848　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 2

or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Mississippi.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored. At Lender's option, Lender may add up to $15.00 of this fee to the unpaid principal balance.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**ARBITRATION AGREEMENT.** This Arbitration Agreement ("Agreement") is entered into by and between Guaranty Bank & Trust Company ("Lender") and each person named above as Borrower ("Borrower").

1. **Part of Transaction.** This Agreement is a part and parcel of the loan transaction between Lender and Borrower described above and is incorporated by reference into the note and/or loan agreement evidencing said loan (collectively, the "Transaction"). The consideration for this Agreement is the consideration given and received in the Transaction, and the mutual benefits to be derived by Lender and Borrower from the convenient, expeditious, economical, and private procedures for resolving disputes between them and other entities or persons covered by this Agreement.

2. **Dispute Resolution.** The term "Claim" as used in this Agreement shall mean any claim, counterclaim, third party claim, cross-claim, dispute or controversy (whether in contract, tort or otherwise, whether pre-existing, present or future, and including statutory, common law, intentional and equitable claims), arising from or relating to any matter, including, but not limited to, this Agreement, the Transaction, any past, present or future interactions, business or dealings or interactions between the parties or between Borrower and any other Covered Persons or any application, advertisements, promotions, or oral or written statements related to this Agreement, the Transaction, any goods or services furnished in connection with the Transaction or the terms of financing, any past, present or future interactions, business or dealings or interactions between the parties or between Borrower and any other Covered Persons, the relationships with respect to the Transaction or any other business or interactions of Borrower with any other Covered Persons (including to the full extent permitted by applicable law, relationships and dealings with third parties who are not signatories to the Transaction or this Agreement) or the validity, enforceability or scope of this Agreement. The term "Covered Persons" as used in this Agreement shall include Borrower, any other party to the Transaction, any other person with respect to any past, present or future interactions, business or dealings or interactions between Borrower and Lender or Lender's employees, officers, directors, agents, parent companies, subsidiary companies, sister companies, successors, assigns, other affiliated entities or persons, Lender and Lender's employees, officers, directors, agents, parent companies, subsidiary companies, sister companies, successors, assigns, other affiliated entities or persons. Any Claim between Borrower and Lender or between Borrower and any other Covered Persons shall be resolved, upon the unilateral or joint election of Borrower or Lender or such other Covered Persons, by BINDING ARBITRATION, as herein provided. A party who has asserted a Claim in a lawsuit in court may elect arbitration with respect to any Claim(s) subsequently asserted in the lawsuit by any other party or parties. In addition, if Lender becomes a party in any lawsuit that Borrower has with any other Covered Persons or any third party, whether through intervention by Lender or by motion made by Borrower or any third party, Lender or Borrower may demand by unilateral or joint election of Lender or Borrower to have all claims in that lawsuit between Borrower and such third party, Lender or Covered Persons resolved by BINDING ARBITRATION under this Agreement.

3. **Arbitration.** The arbitration shall be administered by the American Arbitration Association (the "AAA") under its Commercial Arbitration Rules and its Consumer-Related Disputes Supplementary Procedures, if applicable, (collectively the "Arbitration Rules") in effect at the time the demand for arbitration is filed, as amended by this Agreement. In the event of a conflict between the Arbitration Rules and this Agreement, this Agreement shall control, except that, in the event that the AAA or arbitrator determines that any provision of this Agreement does not comply with applicable standards stated in the AAA's Consumer Due Process Protocol, the standards of the Protocol shall control. The Arbitration Rules of AAA may be obtained by calling AAA directly at 1-800-778-7879 (toll free) or at www.adr.org.

If Borrower asserts a Claim for actual damages of $10,000 or less that is covered by AAA's Consumer-Related Disputes Supplementary Procedures (the "Supplementary Procedures"), Borrower shall be responsible for paying one-half of the arbitrator(s) fees up to a maximum of $125. If Borrower asserts a Claim covered by the Supplementary Procedures for actual damages of more than $10,000 but not more than $75,000, Borrower shall be responsible for paying one-half of the arbitrator(s) fees up to a maximum of $250. If Borrower asserts a Claim covered by the Supplementary Procedures for actual damages greater than $75,000 or that is non-monetary, or if Borrower asserts a Claim of any type that is not covered by the Supplementary Procedures, Borrower shall be responsible for paying the administrative fees and arbitrator(s) fees as provided in the AAA's Commercial Fee Schedule. Lender shall be responsible for paying all administrative fees and arbitrator(s) fees beyond those that are the responsibility of Borrower under this Agreement; however, in the case of any Claim for actual damages greater than $75,000 or that is non-monetary, or that is not covered by the Supplementary Procedures, the prevailing party in the arbitration proceeding may seek to recover its expenses for administrative fees and arbitrator(s) fees from the other party in accordance with the Arbitration Rules. The final award by the arbitrator(s) pertaining to such Claim may apportion the administrative fees and expenses and arbitrator fees between Borrower and Lender as part of the award, as the arbitrator(s) determines is appropriate. The fees and costs stated in this Agreement are subject to any amendments to the Arbitration Rules and the fee and cost schedules of the AAA. The Arbitration Rules permit Borrower to request a deferral or reduction of the administrative fees of arbitration if paying them would cause extreme hardship. Each party also has the option of filing an action in small claims court for any Claim or disputes within the scope of the small claims court's jurisdiction.

This Agreement does not limit the right of Borrower or any other Covered Persons, whether before, during or after the pendency of any arbitration proceeding, to exercise self-help remedies such as set-off, repossession, trustee's sales and the like or to bring an action (individually, and not on behalf of a class) to obtain provisional or ancillary remedies or injunctive relief (other than a stay of arbitration) to protect the rights or property of the party seeking such relief. However, the arbitrator(s) shall have the power to vacate and/or stay any such proceedings or orders granting provisional or ancillary remedies or injunctive relief, upon application by Borrower or any Covered Persons. The taking by either Borrower or any other Covered Persons of any of the self-help remedies or by filing any action in court, including but not limited to the actions described in the preceding sentence, shall not be deemed to be a waiver of the right to elect BINDING ARBITRATION of any Claim upon the filing of a counterclaim or the like by either Borrower or any other Covered Persons in response to any such action. Borrower and Lender specifically acknowledge and agree that this Agreement evidences a "transaction involving commerce" under the FAA, and hereby waive and relinquish any right to claim otherwise.

Unless a party to the arbitration requests that the arbitration be conducted using the AAA's telephonic, on-line, or in-person procedures or the amount in controversy on any claim or counterclaim in the proceeding exceeds $10,000, the arbitration will be based solely on the written submissions of the parties and the documents submitted relating to the dispute. If the amount in controversy on any claim or counterclaim in the proceeding exceeds $10,000, the arbitrator shall allow the parties a reasonable amount of discovery relevant to any claim, counterclaim or defense upon the request of any party, using methods akin to those provided in the Federal Rules of Civil Procedure. Further, if the amount in controversy on any claim or counterclaim in the proceeding exceeds $10,000, the AAA shall not unilaterally select the arbitrator(s), but shall afford the parties the opportunity to select the arbitrator(s) using the AAA's National Roster Selection procedure. The arbitration of any Claim of $100,000 or greater shall be conducted by a panel of three arbitrators. The arbitration of any Claim of a lesser amount shall be conducted by one arbitrator. Except as expressly provided in this Agreement, no Claim may be joined with another dispute or lawsuit, or consolidated with the arbitration of another Claim, or resolved on behalf of a class of similarly situated persons.

All statutes of limitation, defenses, and attorney-client and other privileges that would apply in a court proceeding shall apply in the arbitration. Any in-person arbitration hearing will be held at a location mutually acceptable to the parties to the arbitration. If the parties cannot agree to the location, the location will be selected by AAA. Any dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the scope or validity of this Agreement or of the Transaction, shall be decided by the arbitrator(s). In rendering an award, the arbitrator(s) shall apply applicable contract terms, statutes, statutes of limitations and legal precedent and shall follow the Federal Rules of Evidence, enforce applicable privileges, and employ applicable burdens of proof. The arbitrator(s) shall award only such relief as a court of competent jurisdiction could properly award under applicable law. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the Transaction. Any arbitration shall be initiated prior to the expiration of the applicable statute(s) of limitations.

# PROMISSORY NOTE
## (Continued)

Loan No: [####]4848   Page 3

The arbitral award shall not be appealable and shall only be subject to such challenges as would otherwise be permissible under the Federal Arbitration Act, 9 U.S.C. §§ 1-16. Confirmation of the arbitration award may be had in any court having jurisdiction.

4. **Severability.** If any provision of this Agreement is determined to be unenforceable other than: (a) the waiver of the right to participate in a class or consolidated arbitration; or (b) the provision that the arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim, then the remainder shall be given full force and effect. This Agreement shall survive the closing of any account Borrower may have with Lender, the pay-off, charge-off or acceleration of any loan and the termination of Borrower's business with Lender and shall also survive as to any Claim covered within the scope of this Agreement.

5. **Successors and Assigns.** This Agreement shall be binding upon, and shall inure to the benefit of, the parties, all other Covered Persons, any co-signers, endorsers, guarantors or other obligors to the Transaction and their respective successors and assigns, including to the full extent permitted by applicable law, third parties who may not be signatories to the Transaction or this Agreement, such as Lender's employees, officers, directors, agents, parent companies, subsidiary companies, sister companies, other affiliated entities or persons.

6. **Entire Agreement.** This Agreement constitutes the entire agreement of the parties with respect to its subject matter and supercedes all prior discussions, arrangements, negotiations, and other communications, if any, on dispute resolution. The Parties agree that this Agreement may not be amended or modified in any respect except in writing.

**Arbitration Disclosures:**

1. Under the Arbitration Agreement above, you and the Lender have the right to request arbitration. Arbitration is a procedure in which you and the Lender, or in some cases, the arbitration service provider, select one or more arbitrators to hear our presentations and render a final and binding decision.

2. There are administrative and arbitration fees which must be paid by the parties in accordance with the terms of the Arbitration Agreement.

3. Arbitration is usually final and binding on the parties and may be subject to only limited review.

4. Pre-arbitration discovery may be more limited and different from court proceedings.

5. EXCEPT IN CERTAIN LIMITED CIRCUMSTANCES, THE LENDER AND YOU ARE WAIVING YOUR RIGHT TO LITIGATE DISPUTES IN COURT, INCLUDING ANY RIGHT TO A JURY TRIAL AND ANY RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS.

**THE UNDERSIGNED HAVE READ AND UNDERSTAND THE FOREGOING ARBITRATION AGREEMENT AND BY INITIALING BELOW DO KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVE ANY CONSTITUTIONAL OR OTHER RIGHT TO A JURY TRIAL AND ANY BENEFITS THAT MIGHT BE DERIVED FROM A JURY TRIAL. ALL CLAIMS SHALL BE RESOLVED BY ARBITRATION EXCEPT AS SET FORTH HEREIN.**

Borrower(s)/Guarantor(s) Acknowledgement by initialing: _[initials]_ _[initials]_

**PRIOR NOTE.** [####]4848 & [####]4848.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Guaranty Bank and Trust Company, Vicksburg Branch, 1900 Cherry Street, Vicksburg, MS 39180.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

X _[signature]_   X _[signature]_
JAMES D HOBSON JR    JOSEPH G STRICKLAND

LaserPro, Ver. 16.3.0.026 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - MS L:\CFI\LPL\D20.FC TR-2025978 PR-5